·MORRELL and another *v.* RHEINFRANK and others.

*(District Court, S. D. New York.   May 12, 1885.)*

COLLISION—PRINCIPAL AND AGENT—DISCHARGE OF BOATS.

A canal-boat loaded with coal was consigned to the dock of respondents, who were bound to unload her. They employed shovelers, paying them by the ton. The captain was in charge of the boat and bound to move her as required, so that the different hatches in turn should come beneath the stationary derrick. A scow being in the way so as to prevent the canal-boat's moving far enough astern to bring the fore-hatch under the derrick without being wound round, to avoid the trouble of the latter course, the shovelers, at the captain's request, got permission from those in charge of the scow, which was at the time unattended, to move it ahead. The scow was moved ahead and fastened by the shovelers, the captain of the canal-boat supervising it. Afterwards a passing steamer caused the scow to surge back and forth so that she struck the canal-boat and injured her. *Held,* that the respondents were not liable for the acts of the shovelers in their imperfect fastening of the scow, nor for the consequent damage.

In Admiralty.

*Hyland & Zabriskie,* for libelants.

*Bartlett, Wilson & Hayden,* for respondents.

BROWN, J.   The consignee was doubtless bound to provide a suitable berth for the libelants' boat.   When the canal-boat, having discharged from the after and middle hatches, desired to discharge from the fore-hatch, and the scow was in the way so as to prevent the canal-boat's backing far enough to bring her fore-hatch under the derrick, it was a mere matter of convenience to the captain of the boat whether he should wind her round, which he might have done, leaving

the scow in her place, or whether he should get the scow hauled out, so as to enable him to pull the canal-boat back under the scow's stern. It was not the duty of the respondents to have the scow moved out, merely because that would be a little more convenient for the captain; but, even if that was the respondents' duty, it was a duty which could only be exercised lawfully through the men in charge of the scow. The shovelers worked for the respondents by the ton, and were employed for shoveling only. They certainly had no authority to represent the respondents in moving the scow, or to undertake to move the scow on their behalf, or in procuring those in charge of the scow to move her. The shovelers' proposal, therefore, to get the scow moved, must be regarded as a voluntary proffer of aid to the captain of the canal-boat, to save time and trouble to them all, for their own benefit, rather than to wind the canal-boat about, as they might have done, and would otherwise have been obliged to do. The captain of the canal-boat in reality supervised this whole proceeding. He alone was in charge of his own boat, and had sole control of her in moving from one hatch to another. When the scow was pulled away by the shovelers, the captain ordered them where to halt and make fast. He evidently trusted to their competency to make fast properly. Whether the rope's becoming slack two or three hours after sufficiently to permit the suction and rebound of the scow from passing steamers to strike the canal-boat, was owing to the rising tide or to the lines slipping because not securely fastened, is immaterial, so far as concerns the respondents. The shovelers were not their agents in doing this work about the scow, and the risk of their competency, and of the sufficiency of their work, was, I think, clearly upon the captain who accepted and supervised their services in moving her.

The libel must therefore be dismissed, but without costs.